Charles B. BUREN, Plaintiff–Appellant,

v.

UNITED STATES POSTAL SERVICE,
Defendant–Appellee.

No. 88–2794
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1989.

---

**430**

Charles B. Buren, pro se.

David G. Karro, Washington, D.C., Joy Everett, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for defendant-appellee.

Before GARWOOD, JOLLY and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Charles Buren (Buren), a former postal employee, appeals the dismissal of his complaint alleging discriminatory and/or retaliatory discharge against the United States Postal Service (Postal Service).

**Facts and Proceedings Below**

Buren's ongoing odyssey through the federal courts may be traced to March 21, 1981, the date he was hired by the Postal Service. Buren proved to be less than a model employee. In 1983, he was fired because, to use Buren's own words, he "evidently beat up a lady's three dogs, ...

threw the mail in the lady's face and called the lady and her daughter a bitch." For reasons not altogether clear, Buren was reinstated in 1984. However, all was not well. On October 13, 1984, Buren was involved in an altercation with a supervisor, during which he held the supervisor in a bear hug and "plac[ed] a pen to the [supervisor's] throat."[1] As a result of this incident, the Postal Service fired Buren for the second time.

Buren immediately turned to the Equal Employment Opportunity Commission (EEOC), where he filed at least 217 charges detailing his grievances against the Postal Service, including such noteworthy complaints as the failure of an area manager to say "please" when requesting Buren to return a box of flag pins (intended for children) that Buren had taken. Turning to Buren's more serious complaints, the EEOC rejected his claim that he had been discharged on a discriminatory[2] or retaliatory basis, finding instead that he had been legitimately fired because of his assault on his supervisor. The EEOC also reprimanded Buren for "blatantly overburden[ing] the administrative system" with his frivolous complaints.

After his failures with the EEOC, Buren then turned to the courts. On February 8, 1985, Buren filed a *pro se* complaint in the Southern District of Texas. After the district court held four separate conferences seeking to determine the nature of his claims, it found that Buren had at least fifteen other employment discrimination federal court suits pending against the Postal Service. Upon this discovery, the court consolidated all of these cases. Nevertheless, only six days later Buren filed another *pro se* complaint against the Postal Service, listing nine new claims, and after this suit was consolidated with the others he sought to amend his complaint to add another 142 claims! The district court then ordered Buren to file a single amended complaint listing *all* of his claims. Re-

---

1. These were the words of the supervisor. Buren's only comment was that the supervisor's description was "close enough to his own description for practical purposes."

2. Race (Caucasian), color (white), religion (Catholic), sex (male), and national origin discrimination were all alleged.

sponding with zeal, Buren submitted a twenty-one-page handwritten document containing 453 numbered paragraphs. However, on November 4, 1987, the district court granted the Postal Service's motion to dismiss Buren's claims with prejudice. The court also imposed a requirement that Buren submit any future complaints against the Postal Service to the court for review, advised him that it would dismiss any claims found to be frivolous and stated that in addition it would impose appropriate sanctions.[3] We affirmed the district court in an unpublished opinion. *Buren v. United States Postal Service*, 861 F.2d 716 (5th Cir.1988).

Unfortunately, Buren's sojourn through the courts has continued. On May 9, 1988, Buren filed yet another complaint. This complaint, like the multitude preceding it, alleged discriminatory and retaliatory discharge by the Postal Service. The district court dismissed this suit on May 24, 1988, and admonished Buren that it would set a criminal contempt hearing if he persisted in filing further frivolous actions. Buren then filed a motion to amend the above order, which was denied on June 14, 1988. This appeal followed.

## Discussion

We agree with the district court that Buren's complaint was frivolous. Furthermore, it is clear to us that this complaint is simply one more example of an ongoing pattern of vexatious, multiplicious, and frivolous litigation that has now extended for more than four years. In our first opinion regarding Buren, cited above, we observed that "[p]laintiff should be thankful that the district court merely dismissed his complaint rather than impos[e] Rule 11 monetary sanctions." Buren should heed our advice. Enough is enough. Fed.R. App.P. 38 allows us to "award just damages and single or double costs to the appellee" if we deem an appeal to be frivolous, and Buren's litigation gives new meaning to the term "frivolous."

For the foregoing reasons, we affirm the dismissal of Buren's complaint and award the Postal Service double costs in addition to damages of $500.

AFFIRMED.

---

**3.** The district court also noted Buren's own admission that "his intense tracking of his multi-

ple actions has so interfered with his life as to prevent his pursuit of future employment."